Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL ACUNA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>AMERICAN CAMPUS COMMUNITIES, INC., CYDNEY DONNELL, BILL BAYLESS, HERMAN BULLS, STEVE DAWSON, MARY C. EGAN, ALISON HILL, CRAIG LEUPOLD, OLIVER LUCK, PAT OLES, and JOHN T. RIPPEL,<br><br>　　Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Samuel Acuna ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against American Campus Communities, Inc. ("American Campus" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of American Campus by Abacus Merger Sub I LLC, a wholly owned subsidiary of Abacus Parent LLC, an affiliate of Blackstone Real Estate Income Trust, Inc. ("Blackstone").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of American Campus common stock.

7.  Defendant American Campus is the largest owner, manager and developer of high-quality student housing communities in the United States. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "ACC."

8.  Defendant Bill Bayless ("Bayless") is Chief Executive Officer and a director of the Company.

9.  Defendant Herman Bulls ("Bulls") is a director of the Company.

10. Defendant Steve Dawson ("Dawson") is a director of the Company.

11. Defendant Cydney Donnell ("Donnell") is Chairman of the Board of the Company.

12. Defendant Mary C. Egan ("Egan") is a director of the Company.

13. Defendant Alison Hill ("Hill") is a director of the Company.

14. Defendant Craig Leupold ("Leupold") is a director of the Company.

15. Defendant Oliver Luck ("Luck") is a director of the Company.

16. Defendant Pat Oles ("Oles") is a director of the Company.

17. Defendant John T. Rippel ("Rippel") is a director of the Company.

18. Defendants Bayless, Bulls, Dawson, Donnell, Egan, Hill, Leupold, Luck, Oles, and Rippel are collectively referred to herein as the "Individual Defendants."

19. Defendants American Campus and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On April 19, 2022, American Campus announced that it had entered into a definitive agreement under which Blackstone would acquire all outstanding shares of American

Campus common stock for $65.47 per fully diluted share in an all-cash transaction. The press release announcing the Proposed Transaction states, in pertinent part:

### American Campus Communities Announces $13 Billion Transaction with Blackstone Funds

April 19, 2022 07:59 AM Eastern Daylight Time

AUSTIN, Texas & NEW YORK--(BUSINESS WIRE)--American Campus Communities, Inc. (NYSE: ACC) ("ACC" or the "Company"), the largest developer, owner and manager of high-quality student housing communities in the United States, today announced that it has entered into a definitive agreement under which Blackstone Core+ perpetual capital vehicles, primarily comprised of Blackstone Real Estate Income Trust, Inc. ("BREIT"), alongside Blackstone Property Partners ("BPP"), will acquire all outstanding shares of common stock of ACC for $65.47 per fully diluted share in an all-cash transaction valued at approximately $12.8 billion, including the assumption of debt.

\* \* \*

The transaction has been unanimously approved by ACC's Board of Directors and the independent Special Committee of ACC's Board and is expected to close in the third quarter of 2022, subject to approval by ACC's shareholders and other customary closing conditions.

As a condition to the transaction, ACC has agreed to suspend payment of its quarterly dividend, effective immediately.

As a result of today's announcement, ACC does not expect to host a conference call and webcast to discuss its financial results for the quarter ended March 31, 2022.

**Advisors**

BofA Securities is serving as ACC's lead financial advisor. KeyBanc Capital Markets Inc. is also acting as a financial advisor. Dentons US LLP is serving as the Company's legal counsel.

Wells Fargo Securities LLC, J.P. Morgan Securities LLC and TSB Capital Advisors are serving as Blackstone's financial advisors, and Simpson Thacher & Bartlett LLP is acting as Blackstone's legal counsel.

**About American Campus Communities**

American Campus Communities, Inc. is the largest owner, manager and developer of high-quality student housing communities in the United States. The company is

a fully integrated, self-managed and self-administered equity real estate investment trust (REIT) with expertise in the design, finance, development, construction management and operational management of student housing properties. As of December 31, 2021, American Campus Communities owned 166 student housing properties containing approximately 111,900 beds. Including its owned and third-party managed properties, ACC's total managed portfolio consisted of 203 properties with approximately 140,900 beds. Visit www.americancampus.com.

**About Blackstone Real Estate**

Blackstone is a global leader in real estate investing. Blackstone's real estate business was founded in 1991 and has US $279 billion of investor capital under management. Blackstone is the largest owner of commercial real estate globally, owning and operating assets across every major geography and sector, including logistics, residential, office, hospitality and retail. Our opportunistic funds seek to acquire undermanaged, well-located assets across the world. Blackstone's Core+ business invests in substantially stabilized real estate assets globally, through both institutional strategies and strategies tailored for income-focused individual investors including Blackstone Real Estate Income Trust, Inc. (BREIT), a U.S. non-listed REIT, and Blackstone's European yield-oriented strategy. Blackstone Real Estate also operates one of the leading global real estate debt businesses, providing comprehensive financing solutions across the capital structure and risk spectrum, including management of Blackstone Mortgage Trust (NYSE: BXMT).

21. On May 10, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement, which recommends that American Campus shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) American Campus' financial projections; (ii) the financial analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; (iii) potential conflicts of interest involving KeyBanc Capital Markets Inc. ("KeyBanc"), the Company's additional financial advisor; and (iv) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Mergers; (ii) Recommendation of the Board of Directors; (iii) Unaudited Prospective Financial Information; and (iv) Opinion of Our Financial Advisor.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, American Campus shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning American Campus' Financial Projections**

25. The Proxy Statement omits material information concerning American Campus' financial projections.

26. With respect to American Campus' financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of American Campus and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning BofA's Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by BofA.

31. With respect to BofA's "*Selected Publicly Traded Companies Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each company BofA observed in its analysis.

32. The Proxy Statement fails to disclose the following concerning BofA's "*Selected Precedent Transactions Analysis*": (1) the individual financial metrics of each transaction BofA

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 2, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

observed in its analysis; (2) the closing date of each transaction; and (3) the value of each transaction.

33. The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) the terminal values for the Company; and (2) the individual inputs and assumptions underlying the multiples, discount rates, and growth rates used in the analysis.

34. The Proxy Statement fails to disclose the following concerning BofA's analysis of one-year future stock price targets for the Company's common stock in publicly available research analyst reports: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

35. The Proxy Statement fails to disclose the following concerning BofA's analysis of research analysts' estimates for the Company's net asset value as reflected in selected publicly available Wall Street research analysts' reports: (1) the individual estimates observed by BofA in its analysis; and (2) the sources thereof.

36. The Proxy Statement provides that, "[o]n March 14, 2022, [the] board held a meeting with members of senior management and representatives of Dentons and BofA Securities [where] BofA Securities provided [the] board with an overview of general market trends in the student housing real estate industry and the broader REIT market, including the fact that [the Company's] shares generally traded in the public markets at a discount to [its] NAV, [and] certain publicly available information regarding implied premiums paid in selected precedent transactions in the REIT industry[.]"

37. The Proxy Statement, however, fails to disclose BofA's premiums paid analysis, including each transaction observed and the premiums paid therein.

38. The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

39. Without the information described above, the Company's shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving KeyBanc

40. The Proxy Statement omits material information concerning potential conflicts of interest involving KeyBanc.

41. The Proxy Statement provides that the Company engaged KeyBanc as an additional financial advisor to the Company in connection with the Proposed Transaction.

42. The Proxy Statement, however, fails to disclose the following concerning KeyBanc: (1) the amount of compensation KeyBanc has received or will receive in connection with its engagement by the Company; (2) the amount of KeyBanc's compensation that is contingent upon consummation of the Proposed Transaction; and (3) whether KeyBanc has performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received or expected to receive for providing such services.

43. The Proxy Statement also fails to disclose the financial analyses performed by KeyBanc.

44. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

46. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

47. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

48. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

53. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

57. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

60. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

     D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

     E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 2, 2022                        Respectfully submitted,

                                          **HALPER SADEH LLP**

                                          By: /s/ Daniel Sadeh
                                          Daniel Sadeh, Esq.
                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                          667 Madison Avenue, 5th Floor
                                          New York, NY 10065
                                          Telephone: (212) 763-0060
                                          Facsimile: (646) 776-2600
                                          Email: sadeh@halpersadeh.com
                                                              zhalper@halpersadeh.com

                                          *Counsel for Plaintiff*